UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ELAINE EUBANKS,                    )
                                   )
            PLAINTIFF,             )
                                   )
      VS.                          )          CAUSE NO. 3:11-CV-135-RLM
                                   )
NORFOLK SOUTHERN RAILWAY           )
COMPANY AND DAVID R. MEIER,        )
                                   )
            DEFENDANTS.            )

OPINION and ORDER

This matter is before the court on a summary judgment motion filed by defendants Norfolk Southern Railway Company and David R. Meier, and on plaintiff Elaine Eubanks's motion for leave to file supplemental exhibits. The court heard argument on the motions on June 20. For the reasons that follow, the court grants the motion to supplement and also grants Norfolk Southern's summary judgment motion.

In April 2009, Elaine Eubanks walked along Main Street in Elkhart, Indiana, going from her home to an activity at her church. Walking south along the left (east) side of the street, she reached the point where five train tracks cross Main Street. She walked to a small island in the intersection, slightly past and across the street from the flashing gates, where she waited for the eastbound train to finish passing through the intersection. When the eastbound train made it all the way through the intersection, she saw a

bicyclist scoot across the tracks and she began to walk across the tracks, looking down the length of the track to the west, from where the eastbound train had come. Ms. Eubanks never looked back to the east to see a westbound train entering the intersection just after the eastbound train had cleared it. The westbound train blew its horn and rang its bell continuously, but Ms. Eubanks walked in front of it with her eyes towards the west, apparently never seeing the train. The train struck her and knocked her into the area between the two tracks. Ms. Eubanks survived the accident, but was severely injured.

In a complaint filed in Elkhart Superior Court and removed to this court, Ms. Eubanks alleges that Norfolk Southern negligently caused the collision. Her claims can be divided into five categories. First, she asserts that Norfolk Southern is liable for designing a crossing – one with a high volume of train, auto, and foot traffic – that was more than ordinarily hazardous to pedestrians because one train can obscure the view of another on the curve, because there is no elevated or channelized sidewalk, and because there are no pedestrian gates separate from the automobile gates. Second, she asserts that Norfolk Southern is liable for failing to maintain the crossing, allowing the pavement surface to become pitted, defective, and difficult to walk on safely. Third, she contends that train horns are difficult to hear at this intersection when another train comes through at the same time. Fourth, Ms. Eubanks asserts that the engineer didn't sound the horn properly according to regulation and company policy. And, fifth, Ms. Eubanks asserts that the engineer caused the accident by not applying the brake as soon as he saw her.

Norfolk Southern Railway Company and David R. Meier, the engineer operating the train that day, have moved for summary judgment because federal law preempts all the claims, because its actions didn't cause the accident, and because Ms. Eubanks was more than fifty percent responsible for the accident.

Ms. Eubanks responds that the crossing's very complicated design and the way this train was operated combined to create a situation in which one passing train can obscure the view and sound of another approaching train. Ms. Eubanks provided the court with evidence of three witnesses who didn't become aware of the train until it was very close and Ms. Eubanks's own testimony saying she also wasn't aware of the train's approach. Ms. Eubanks says there is a question of fact whether a variety of factors, including the design of the intersection, the nature of sound and sightlines when two trains pass, the engineer's improper horn signaling sequence, and the condition of the pavement caused the accident.

Ms. Eubanks served her response opposing the summary judgment motion. Later, and on the same day that Norfolk Southern filed the fully-briefed motion, Ms. Eubanks filed a motion to file supplemental exhibits, with two declarations attached.

## I. Motion for Leave to File Supplemental Exhibits

Ms. Eubanks seeks leave to file supplemental exhibits and says that two eyewitnesses to her train accident had "dropped out of sight and could not be found in the exercise of due diligence until now." Having now found the missing eyewitnesses, Ms. Eubanks attached their declarations and asks the court to consider them under Federal Rule of Civil Procedure 56(d). Ms. Eubanks says the witnesses' declarations show a factual dispute that defeats Norfolk Southern's summary judgment motion. Norfolk Southern says Ms. Eubanks didn't comply with Rule 56(d)'s requirement to show that good faith was exercised and didn't produce the evidence in a timely manner. Ms. Eubanks then filed a notice of compliance with Rule 56(d) that included an affidavit describing her counsel's attempts to get the witness statements over the course of several months. Norfolk Southern also contends that these exhibits don't create a genuine issue of material fact.

That Ms. Eubanks didn't raise this discovery-related concern while the parties were briefing the summary judgment questions and only first filed this evidence after that process was complete raises a valid concern; it left Norfolk Southern unable to address the new evidence in its reply. Still, since the discovery period was still open and since Ms. Eubanks's counsel, according to the affidavit later filed, diligently pursued the witnesses, the court can't say that this action was in bad faith.

Rule 56(d) requires Ms. Eubanks to show by declaration or affidavit that she couldn't present the facts in opposition to the summary judgment motion,

but it doesn't require that she do so on a particular timeline. While trial courts have the discretion to enforce rules strictly, they also can allow some leeway. Stevo v. Frasor, 662 F.3d 880, 887 (7th Cir. 2011) (noting that, while district judges are entitled to enforce strict compliance, "[w]e have not endorsed the very different proposition that litigants are entitled to expect strict enforcement by district judges. Rather, 'it is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion.'" *quoting* Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995); *accord* Harmon v. OKI Systems, 115 F.3d 477, 481 (7th Cir. 1997). This court has discretion to grant leave to file these declarations if good cause is shown.

Norfolk Southern also contends that the leave shouldn't be granted to file these declarations because video evidence shows the locomotive's approach, including when the horn was sounded and when a record includes very explicit evidence, such as video, conflicting accounts that blatantly contradict the record don't create a factual dispute. Scott v. Harris, 550 U.S. 372, 380 (2007). Scott v. Harris doesn't preclude the declarations. What Ms. Eubanks seeks to admit (Mr. and Mrs. Farmwald's declarations about when they personally heard the train horn) don't contradict the video evidence; they support the contention train horns are hard to hear in this particular intersection while two trains are passing. The parties ultimately don't disagree about when the horn was sounded. The declarations are admissible for considering the motion for summary judgment.

While Ms. Eubanks has left Norfolk Southern unable to respond to the last-minute evidence she has submitted, she has at least shown good cause (via the later-filed affidavit) as to why the witness declarations were submitted late. Because of this, the court grants Ms. Eubanks's motion for leave to file supplemental exhibits and, since they are attached to the motion, deems them filed for purposes of the summary judgment motion.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011). A fact is "material" if it might affect the outcome of the litigation under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 245, 248 (1986). Conversely, where a fact wouldn't affect the outcome of a suit, whether it is disputed is irrelevant. Id. Disputes over material facts are "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Summary judgment is the time when a plaintiff must come forward with enough evidence to show that he can convince a trier of fact of his version of the facts by a preponderance of the evidence. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. at 252; Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003) (describing summary judgment as the "put up or shut up" moment of a lawsuit).

While reviewing Norfolk Southern's summary judgment motion, the court doesn't weigh the evidence but rather accepts the admissible evidence Ms. Eubanks has presented and construes all facts and draws all reasonable inferences from those facts in favor of Ms. Eubanks, the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; *see also* Gunville v. Walker, 583 F.3d 979, 975 (7th Cir. 2009) ("Admissibility is the threshold question

because a court may consider only admissible evidence in assessing a motion for summary judgment.").

## III. Jurisdiction

The court has diversity jurisdiction over this suit. 28 U.S.C. § 1332. The parties are completely diverse. Ms. Eubanks is a citizen Elkhart, Indiana. Norfolk Southern is incorporated in Virginia and its principal place of business is also in Virginia. Engineer David R. Meier is a citizen of Ohio. Ms. Eubanks avers that her injuries are serious and have caused a permanent disability, which led Norfolk Southern to assert, without dispute from Ms. Eubanks, that the amount in controversy could exceed the $75,000 threshold. The matter was removed from state court pursuant to 28 U.S.C. § 1446(b).

## IV. Federal Preemption

Federal law preempts three of Ms. Eubanks's theories of negligence.

First, Ms. Eubanks contends that this busy crossing was designed in such a way that it was unsafe for pedestrians. Since there is neither an elevated and channelized sidewalk on the east side of the road, nor a gate that warns or stops pedestrians walking on that side of the road, a pedestrian can cross onto the tracks without being stopped and alerted to the presence of a train. Ms. Eubanks contends that a jury could find this design to be more than ordinarily hazardous and so could find Norfolk Southern liable for the accident.

Second, Ms. Eubanks says that whether the train was going too fast for the conditions is a question of fact that a jury should decide. She acknowledges that the train was going just under 20 mph as it approached and crossed the intersection. She further acknowledges that federal regulation sets a speed limit of 60 mph for freight trains on this type of track and that Norfolk Southern's internal policy sets a speed limit of 20 mph for the Main Street crossing. Still, Ms. Eubanks says, the engineer should have operated at a slower speed and a jury should be allowed to decide whether the railroad was negligent in allowing the train to operate too fast for conditions.

Third, Ms. Eubanks contends, and has provided a few witnesses who agree, that a train horn sounded by an approaching train is difficult to hear at this intersection when another train is crossing the intersection. This, she says, makes this particular crossing unsafe and makes Norfolk Southern negligent.

Norfolk Southern says that all three of these contentions are specifically precluded by federal statutes and regulation. Norfolk Southern asserts that, where federal funds have been used to upgrade a railroad crossing, that crossing is required to be designed according to federal regulation and federal law preempts state law (which includes tort suits rooted in state law). According to Norfolk Southern, this would act to preempt Ms. Eubanks's claims about the lack of sidewalks, lack of pedestrian gates and warning systems, and contention that train horns can't be heard when other trains are crossing. Furthermore, where federal guidelines specify a maximum speed for a

given section of track, Norfolk Southern contends that state tort law can't work to hold the railroad accountable to another speed limit, preempting Ms. Eubanks's claim that the train was operating too fast for conditions.

The Federal Railroad Safety Act, 49 U.S.C. §§ 20101, *et seq.* ("FRSA") was first passed in 1970 and became the tool by which a uniform national standard of railroad operations was enacted. With the intent of creating a single national standard for railroad operation, the FRSA gives the federal Secretary of Transportation the power to regulate. 49 U.S.C. § 20103; *accord* <u>Michigan Southern Railroad Company v. City of Kendallville, Indiana</u>, 251 F.3d 1152, 1154 (7th Cir. 2001) ("The FRSA was enacted under Congress' constitutional authority to regulate interstate commerce with the intent of providing uniform national regulation of railroad operations."). The FRSA's impact on state law is explicit.

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106.

The Highway Safety Act of 1973 specifically addressed grade crossings (the point where the railway intersects with streets and where cars and pedestrians meet trains). That act contained the Federal Railway-Highway Crossings Program, codified as 23 U.S.C. § 130, which provided federal

highway funds for projects to upgrade crossings and eliminate hazards. Where federal funds were used to fund such an upgrade, the intersection design must include certain warning and traffic control standards, according to the number of tracks, speed of the trains, volume of auto traffic, and other considerations. *See* 23 C.F.R. § 646.214(b).

The parties agree that this crossing was improved using federal highway funds and Ms. Eubanks doesn't contend that the implementation didn't follow the required regulations. Ms. Eubanks acknowledges in her memorandum in opposition to the summary judgment motion that, "The Main Street crossing was equipped with train activated flashers and gates that were paid for using federal funds. Therefore, under [Norfolk Southern Railroad Co. v. Shanklin, 529 U.S. 344 (2000)], the crossing protection issue is preempted."

Still, Ms. Eubanks maintains that her claim that the intersection was extra-hazardous should be presented to the jury in spite of the preemption expressed in Norfolk Southern v. Shanklin, 529 U.S. 344. The court has found no support for this position. The Supreme Court and the court of appeals have spoken clearly on this matter, leaving the court without the power to grant Ms. Eubanks's request. "[U]nder Shanklin, preemption in this context operates to preclude any state law claim premised upon any alleged inadequacies in railway crossing warning devices, and the district court properly dismissed the plaintiffs' claims in this regard." Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 747 (7th Cir. 2005). The Indiana Court of Appeals has also said that Shanklin forecloses liability under Indiana tort law: "[T]he issue

-11-

of whether a grade crossing has become "extra hazardous" is irrelevant in determining a railroad's civil liability where, as in the instant case, warning devices have been installed with federal funds under a project approved by the FHWA." Randall v. Norfolk Southern Railway Co., 800 N.E.2d 951, 956 (Ind. Ct. App. 2003) (*footnote omitted*).

Norfolk Southern is correct. Where federal funds have been used to upgrade a crossing (and they have in this case), federal regulation completely preempts state tort law. Norfolk Southern is entitled to judgment as a matter of law as to the question of whether the crossing design was extra hazardous, including Ms. Eubanks's claims that the design of the warning systems was inadequate.

Federal law also preempts Ms. Eubanks's assertion that the train was going too fast for conditions (sometimes phrased as the engineer "failed to keep his train under proper control"). The parties agree that the federal regulation (49 C.F.R. § 213.9(a)) created a maximum speed of 60 mph for this type of track (Class 4 track), and that Norfolk Southern internally established a speed limit of 20 mph for this particular crossing. The parties also agree that the train was travelling at or just below 20 miles per hour when it approached and crossed the Main Street intersection. *See* Memorandum in Opposition at *14 ("The plaintiff does not contend that the train was exceeding the track speed established by the railroad (i.e. 20 MPH) or the maximum speed established for Class 4 track by the Federal Railroad Administration."). Still, Ms. Eubanks contends, a question of fact exists as to whether the train was going too fast for

the conditions. Norfolk Southern contends that anything below the track's rated speed (60 mph), the train was, by definition, not speeding and Ms. Eubanks' issue is preempted.

Sections of track have a maximum speed that is established based on a number of factors. *See* 49 C.F.R. § 213.9. Because a track is evaluated according to its features and assigned a class (Class 1 track through Class 5 track), "[u]nderstood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that [the plaintiff] seeks to impose on [the railroad]." CSX Transportation Inc. v. Easterwood, 507 U.S. 658, 674 (1993). This track is Class 4 track, which makes the speed limit for this section of track 60 mph. 49 C.F.R. § 213.9. Operation of the train at around 20 mph is well within that and, because a state-law tort theory can't supersede a federal regulation scheme, the train wasn't speeding. No question of fact remains concerning the train's speed, and Norfolk Southern is entitled to judgment as a matter of federal law and regulation superseding state law.

Ms. Eubanks says one of the causes of the accident was that the sounding of the horn was both "extremely brief and barely audible." Ms. Eubanks provides the court with accounts of eyewitnesses who claim that they didn't hear the horn of the second train (the one that hit Ms. Eubanks) until the train was in the intersection. Maria Vasquez Decl.; Alma Farmwald Decl.; Stanly Farmwald Decl. The horn blast's brevity is discussed in the next section because it alleges that the engineer deviated from the regulation governing how

-13-

long a blast should be. Ms. Eubanks' assertion that the intersection design makes train horns inaudible when another train is crossing the track is addressed in this section because federal law preempts it. Because federal regulation specifically addresses the design of the intersection and the sounding of the horn, no state law requirement can be imposed on the railroad to signal differently when approaching an intersection with a train already passing through it. *See* 49 C.F.R. § 229.129 (detailing the precise minimum and maximum decibel level at which a horn should sound, as measured 100 feet forward of the locomotive, and specifying how to test for compliance); Norfolk Southern Railroad Co. v. Shanklin, 529 U.S. 344 (2000) (finding that federal law preempts state law on questions of railroad intersection design); Fifth Third Bank ex rel. Trust Officer v. CSX Corp., 415 F.3d 741, 747 (7th Cir. 2005) (noting that Shanklin forecloses suits based in state law and regarding the safety of a crossing where federal funds have been used to upgrade that crossing).

Federal law completely preempts these three claims -- that this intersection was unsafe for pedestrians due to its design, that the train was operating too fast for conditions (expressed as a failure to control the train), and that horns are inaudible when another train is passing. Norfolk Southern is entitled as a matter of law to judgment in its favor as to each of these issues.

## V. NEGLIGENCE IN CAUSING THE ACCIDENT

Ms. Eubanks's asks the court to view the accident scene broadly from her point of view. Four other people didn't realize a second train was coming into the intersection, whether because of the design of the intersection, the first train's noise, or something improper done by the second train. Maria Vasquez, Alma Famwald, and Stanly Farmwald were all sitting in cars waiting for the trains to clear the intersection and the gates to lift. Each said in a declaration that he or she didn't become aware of the second train until it was very near to striking with Ms. Eubanks. In addition, the video shows a bicyclist cross the tracks after the first train cleared the intersection and before the second train entered, and Ms. Eubanks says that this shows that the bicyclist, who is unidentified, mustn't have seen the second train either. Finally, Ms. Eubanks herself says that she wasn't aware of the train until the last second, and the video supports her: she doesn't appear to be running across the tracks or in any way avoiding an oncoming train. The court accepts these propositions as true for summary judgment purposes.[1]

Ms. Eubanks reasons that if this many people were unaware of the second train coming through the intersection, then the fault must lie with Norfolk Southern. Tort law requires more than large-scale unawareness of the approaching train to put liability for this accident on Norfolk Southern. The court must focus on individual assertions of duty, breach, and causation.

---

[1] These declarations aren't accepted as evidence that the horn was sounded (or not sounded) a certain way because uncontroverted audio/video evidence is in the record showing the train's approach and horn soundings. *See* <u>Scott v. Harris</u>, 550 U.S. 372, 380-381 (2007). Instead, the declarations are accepted at face value; they show that these particular declarants didn't see or hear the train until it was very near the point of impact.

Ms. Eubanks asserts three claims that the railroad breached its duty in ways that aren't preempted by federal law: first, Norfolk Southern allowed the pavement of the intersection to become pitted, defective, and difficult to walk on safely; second, the engineer didn't properly signal the train's approach to the crossing; third, the engineer didn't start braking the train as soon as he saw Ms. Eubanks (which is also alternatively phrased as failing to keep a lookout for pedestrian traffic at the intersection or failure to keep the train under control).

Norfolk Southern contends that none of these items is the proximate cause of the accident, and that Ms. Eubanks is barred from recovering since her failure to look for the approaching train was the primary cause of the accident so even if a jury were to find some negligence on the part of Norfolk Southern, Ms. Eubanks's fault is more than half the cause for the accident.

## A. POORLY MAINTAINED PAVEMENT

Ms. Eubanks alleges that Norfolk Southern failed to maintain the pavement in the crossing area, that "the pavement surface is pitted, defective and difficult to walk on safely." Whether evidence supporting this statement exists is unclear. Were the grainy photos attached electronically clearer, they might have shown the pavement to be in poor condition; as submitted electronically to the court, though, they don't show that. Furthermore, Ms. Eubanks's expert's report (Report of William D. Berg, Ph.D., P.E., exh. 6 to plaintiff's memorandum in opposition), describes the intersection in detail, but doesn't mention any concern about the pavement.

More pertinently, the summary judgment record shows no correlation between any badly maintained pavement and the accident. The record contains no suggestion that, had the pavement been well maintained, the accident would have been avoidable. On the other hand, the record includes an event video, recorded by a locomotive-mounted camera using a proprietary system called "RailView." Motion for Summary Judgment, exh. 5. That video shows the train's approach to the intersection and shows the figure that turns out to be Ms. Eubanks walk across the intersection, her attention apparently focused in the wrong direction. It shows her walking at what appears to be a normal speed as the train bears down on her, horn blowing. At no point does the figure stumble or change direction, either of which might support an inference that the pavement's condition was a factor in the accident. Ms. Eubanks has

provided the court with no theory under which the condition of the pavement was the cause of the accident.

A plaintiff has the burden of proving more than just a breach; she must show that a wrongful act committed by the defendant was the cause in fact of the accident. <u>Daub v. Daub</u>, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994). "The element of causation requires that the harm would not have occurred but for the defendant's conduct." <u>Topp v. Leffers</u>, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) *quoting* <u>City of East Chicago v. Litera</u>, 692 N.E.2d 898, 901 (Ind. Ct. App. 1998). Cause in fact is a necessary underpinning of proximate cause, which is required to prove a negligence claim under Indiana law. "The 'but for' analysis presupposes that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm." <u>Daub v. Daub</u>, 629 N.E.2d at 877.

No reasonable trier of fact could view the bad pavement to be so much as a "but-for cause" of the accident. Norfolk Southern is entitled to summary judgment as to the issue of the pavement maintenance.

## B. Improper Horn Signaling Sequence

Ms. Eubanks contends that the engineer didn't follow regulation in signaling the train's approach to the intersection and that that failure caused her to be unaware of the train. The parties agree (and the RailView video clearly demonstrates) that the horn was sounded four times: three short blasts, starting around 21 seconds from the intersection, and one long blast that began around 5 seconds before the intersection and continued through the intersection and sounded as the engine hit Ms. Eubanks. Also uncontroverted is that the locomotive's bell began ringing with the first whistle blast (21 seconds before the intersection) and continued through the intersection and accident. The "ditch lights," which are lights mounted low on a locomotive that flash when a train approaches an intersection, began flashing at that same point (21 seconds before the intersection) and continued through the intersection and accident.

The horn sequence didn't comply with the regulation. The horn sequence began around 21 seconds before the intersection and over those 21 seconds, the driver sounded three short blasts and then one long blast as he approached and entered the intersection. The long blast continued through the whole intersection including through the accident. Section 222.21 of Chapter 49 of the Code of Federal Regulations provides that the engineer shall sound two long blasts, one short blast, and then one long blast when he approaches an intersection. This sequence is to begin between 15 and 20 seconds before the intersection (although starting up to 5 seconds early is excusable if the

engineer, in good faith, misestimated his intersection arrival time) and the sequence is to continue until the train has entered the intersection. 49 C.F.R. § 222.21(a). Mr. Meier, the engineer, began the horn sequence 21 seconds before the intersection, but because he used three short blasts followed by one long blast, he deviated from the regulation in the first two blasts; where they should have been long in nature, they were short. His third and fourth blasts appear to have adhered to the regulation. Put more concisely, where he should have sounded Long-Long-Short-Long, he actually sounded Short-Short-Short-Long.

The RailView video shows that the horn was signaled improperly the first two times (short instead of long) and also shows that the non-compliant first two horn soundings didn't cause the accident. When Mr. Meier began to sound the horn continuously (that is, the beginning of the final blast that began 5 seconds before the train entered the intersection and continued through it and through the time of the accident), Ms. Eubanks appeared to be more than 10 feet away from the edge of the track. In the ensuing 5 seconds and while the horn blasted continuously, she crossed the adjacent track, walked across the empty space between the tracks, and crossed most of the track on which Mr. Meier's train was operating. The train struck Ms. Eubanks when she was most of the way across the track.

At trial, a plaintiff must carry the burden of showing not only that the defendant breached a duty, but also that the defendant's breach caused the accident. Daub v. Daub, 629 N.E.2d at 877; Topp v. Leffers, 838 N.E.2d at

1032 (requiring a "reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered.").

While a jury could find that the sounding of the horn was out of compliance with the regulation (49 C.F.R. 222.21(a)), no reasonable jury could find on this record that the required longer blasts issued at 21 seconds before the intersection and 10 seconds before the intersection (the approximate times of the short blasts), would have changed the outcome of the incident. To some extent, Ms. Eubanks's own evidence shows the opposite. During her deposition, Ms. Eubanks recounted the moments before she was hit. She was asked, "Did you ever hear either train sound its horn?" She answered, "Oh, no. I never heard that." The attorney asked, "From either train?" "No," Ms. Eubanks answered. Eubanks Depo. at 52. When asked later in the same deposition whether, "on the day of the accident, did you hear the horn on the train that was approaching before it struck you?" Ms. Eubanks again asserted that she did not. The attorney followed up, "Is it possible that horn was being sounded and that, for some reason or another, you just didn't hear it?" Ms. Eubanks answered, "It's possible, but I didn't hear it." Id. at 72. She also denied hearing the bell ringing on the locomotive. Id. at 52. The RailView video shows (and Ms. Eubanks doesn't dispute) that the horn was sounding for a full five seconds while the locomotive moved the final 140 feet to the point of impact and Ms. Eubanks moved about 10 to 15 feet across the track to the point of impact.

Norfolk Southern has pointed to uncontroverted evidence that the accident happened in spite of the horn being sounded continuously for 5 seconds before impact. Ms. Eubanks hasn't pointed to anything that would indicate that, while the horn was inaudible to her as the train bore down on her, its horn would have been more audible 10 or 20 seconds earlier when the train was much farther from the point of impact and while the other crossing train was still in the intersection in front of Ms. Eubanks.

Ms. Eubanks also says the engineer should have sounded a series of short blasts as a warning to pedestrians. Norfolk Southern operating rules provide in relevant part, that an engineer should sound a "[s]uccession of short blasts" as an "[a]larm for employees, roadway workers, other persons, or animals on or near the track." Plaintiff's memorandum in opposition, exh 7. While company policy dictates the use of the alarm blasts to move people or animals off the track, it doesn't supersede specific federal regulation (49 C.F.R. § 222.21(a) that dictates exactly how a train is to sound its horn on its approach to, and entrance into, an intersection. Norfolk Southern Railroad Co. v. Shanklin, 529 U.S. 344 (2000); CSX Transportation Inc. v. Easterwood, 507 U.S. 658 (1993). Further, Ms. Eubanks provides no evidence on which a jury could find that a series of short blasts would have better alerted her than the one, long blast that sounded from before she entered the track to after she was hit and that she was unable to hear. Ms. Eubanks's further assertion that the engineer should have sounded a series of short blasts instead of the long blast

is superseded by federal regulation which requires the long blast on approaching and entering an intersection. 49 C.F.R. § 222.21(a).

While the parties agree that the sounding of the horn deviated from the federal regulation, no evidence supports a finding that sounding the horn differently long before the accident would have made any difference in the what happened to Ms. Eubanks. Norfolk Southern is entitled to judgment as a matter of law as to whether the sounding of the horn was a cause of the accident.


### C. Failure to Brake the Train on Seeing a Pedestrian

Finally, Ms. Eubanks asserts that Mr. Meier should have applied the brakes immediately on seeing her walking towards the intersection. She acknowledges that there would have been no way for the train to stop in those few seconds, but the brakes might have slowed the train just enough that she could have crossed the track before the point of impact. Norfolk Southern contends that there is no duty to apply the brakes for every person near the tracks, only a duty to apply the brake when it becomes apparent that the pedestrian won't yield to the train. In Ms. Eubanks's case, the moment where it was apparent she wouldn't be stopping and waiting for the train occurred so late that braking the train would have done no good.

## 1. DUTY

To succeed at trial on a negligence claim for failing to apply the brakes in time, Ms. Eubanks must demonstrate that Norfolk Southern had a duty to brake the train and that it breached that duty. The train didn't brake until after the accident, so the analysis turns to when the duty was created and whether a breach of that duty caused the accident. Ms. Eubanks claims that the duty to brake the train arose when the train rounded the bend enough to see the intersection and see Ms. Eubanks, then a pedestrian standing on a traffic channelizing island waiting for the other train to pass.

The assertion that a duty to apply the brake was created when Ms. Eubanks first came into view is a misapplication of tort law. Trains can't pull the emergency brake for any pedestrian, bicyclist, or automobile near the tracks; both tort law and logic dictate that the brake should be activated when – but only when – a collision is foreseeable and doing so can avoid that collision. *See, e.g.* <u>Beal v. National Railroad Passenger Corporation</u>, No. 2:04-CV-250, 2006 WL 2095239 (N.D. Ind., July 27, 2006) ("A train engineer has a right to assume, until the contrary becomes evident, that one approaching the track in an automobile will give the train the right of way, and is not required to attempt to bring his train to a standstill because the automobile may be seen to be approaching the track, but has a right to assume, until the contrary appears, that the occupants of such automobile will use reasonable care for their protection, and will give the train the right of way to which it is entitled under the law.").

The duty to brake a train stems from the foreseeability of the harm. <u>Webb v. Jarvis</u>, 575 N.E.2d 992, 997 (Ind. 1991) ("Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm."). The duty to brake the train comes not on first spotting any pedestrian near the track, but on realizing that a particular pedestrian won't yield to the train and braking the train will avoid an accident. "Absent a duty, there can be no breach, and therefore, no recovery for the plaintiff in negligence." <u>Pfenning v. Lineman</u>, 947 N.E.2d 392, 398 (Ind. 2011) (*quotation omitted*).

The evidence submitted is uncontroverted. No matter how generously viewed in the non-movant's favor, the RailView video gives no impression that Ms. Eubanks will walk in front of the train until she actually does. Instead, the viewer of the video, who shares a perspective with the engineer, can see multiple pedestrians and vehicles already waiting for the other passing train and can see Ms. Eubanks walk up close to the tracks, but not indicate (for instance by running or by seeming to calculate the speed of the oncoming train) that she will dodge in front of the train. The duty to apply the brake didn't arise until that last second, when Ms. Eubanks walked to the tracks and didn't stop. At that instant (right before impact), but not before, it became apparent that she was going to cross the tracks.

## 2. CAUSATION

Since the duty to brake the train wasn't created until Ms. Eubanks stepped onto the tracks at the last instant before the accident, Ms. Eubanks must show that a jury could find that the accident was caused by a failure to brake at that final moment. The RailView video shows that this particular train took around 50 seconds to go from 19.8 mph to a full stop (which it did immediately after the accident) and no other evidence in the summary judgment record addresses the effect of applying the brakes on a train of this size. Measuring from the instant a duty to brake the train was created, Ms. Eubanks hasn't pointed to any evidence that a jury could find to hold Norfolk Southern liable for Mr. Meier's failure to brake the train. Norfolk Southern is entitled to judgment on the question of whether Mr. Meier caused the accident by failing to brake the train on first seeing a pedestrian approach the tracks.

## VI. CONCLUSION

Ms. Eubanks has moved for leave to file supplemental exhibits in opposition to Norfolk Southern's motion for summary judgment. Because she has shown good cause as to why the exhibits could not be filed with her opposition to the summary judgment motion, the court GRANTS leave to file the exhibits (Doc. No. 50). The attached exhibits are deemed filed for purposes of the summary judgment motion.

Norfolk Southern has moved for summary judgment as to all of Ms. Eubanks' claims following the train accident. It has shown that federal law

preempts state-law-based claims on several of Ms. Eubanks' claims, and, regarding those claims not preempted by federal law, Norfolk Southern has shown that there is uncontroverted evidence demonstrating that it isn't liable for the accident. Ms. Eubanks' hasn't pointed to any evidence that the court can accept as counteracting that position. Therefore, the motion for summary judgment (Doc. No. 44) is GRANTED and judgment is entered on the merits in favor of defendants Norfolk Southern Railway Company and David R. Meier.

SO ORDERED.

ENTERED: June 20, 2012

_____/s/ Robert L. Miller, Jr._____ _____
Judge
United States District Court