UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELAINE EUBANKS, | ) |
| | ) |
|     PLAINTIFF, | ) |
| | ) |
|     vs. | )   CAUSE NO. 3:11-CV-135-RLM-CAN |
| | ) |
| NORFOLK SOUTHERN RAILWAY | ) |
| COMPANY AND DAVID R. MEIER, | ) |
| | ) |
|     DEFENDANTS. | ) |

OPINION and ORDER

This matter is before the court on plaintiff Elaine Eubanks' Federal Rule of Civil Procedure 59(e) motion to alter or amend the summary judgment opinion and order issued June 20, 2012. Ms. Eubanks limits her argument to the assertion that the court overlooked or failed to address the conclusion in the report of William D. Berg, Ph.D., P.E., that the failure to sound the train's horn in the pattern required by federal regulation, in addition to multiple other factors, caused Ms. Eubanks to have difficulty detecting the approaching westbound train. Ms. Eubanks contends the question of whether the improper horn pattern was a contributing cause of the collision is a question for the jury.

I. BACKGROUND

The court assumes the reader's familiarity with the facts of the case. Ms. Eubanks brought suit against defendants Norfolk Southern Railway Company

and David R. Meier (collectively Norfolk Southern) alleging multiple theories of negligence. On June 20, the court granted summary judgment for Norfolk Southern on all claims. The court found that federal law preempted three of Ms. Eubanks' theories of negligence: the crossing's design, the train's speed, and the horn's volume all complied with federal statutes and regulations. The crossing was improved with federal highway funds and conformed with the applicable design regulations. This compliance completely protects the intersection from state tort law claims. See <u>Norfolk S. Ry. Co. v. Shanklin</u>, 529 U.S. 344 (2000). The train was traveling well within the maximum speed established by federal regulation for that particular type of track, 49 C.F.R. § 213.9(a) (2012), so any question of whether the speed was appropriate under state tort law is preempted. See <u>CSX Transp., Inc. v. Easterwood</u>, 507 U.S. 658, 674 (1993). The volume of the train's horn (49 C.F.R. § 229.129 (2012)) and the method of sounding the horn (49 C.F.R. § 222.21 (2012)) are also established by federal regulation, and combined with the design of the crossing, compliance with federal regulations preempts a state tort law claim that the train's horn was inaudible. See <u>Norfolk S. Ry. Co. v. Shanklin</u>, 529 U.S. 344 (2000).

The court determined that none of Ms. Eubanks' three additional theories of negligence -- the condition of the pavement in the crossing, the engineer's failure to apply the brake of the train immediately upon seeing Ms. Eubanks, and the failure of the engineer to signal the horn properly as the train approached the intersection -- were a proximate cause of the collision.

The court found no correlation between the condition of the pavement in the intersection and the collision, and so concluded the pavement maintenance wasn't a cause in fact of the accident. See Daub v. Daub, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994) (cause in fact, such that the harm would not have happened but for the defendant's conduct, is an essential element of negligence under Indiana law). The court determined the engineer's duty to apply the train's brake, the point in time when it was apparent Ms. Eubanks was going to cross the tracks, arose at the moment she stepped onto the tracks. See Beal v. National R.R. Passenger Corp., No. 2:04-CV-250, 2006 WL 2095239 (N.D. Ind. July 27, 2006); Webb v. Jarvis, 575 N.E.2d 992, 997 (Ind. 1991). The court found the moment between when this duty was created and the collision was so short that the failure to brake at that moment was not a cause of the collision. Finally, the court determined that the collision would have occurred regardless of whether the train's horn was sounded appropriately, and this failure wasn't a cause of the accident. Accepting all the evidence in Ms. Eubanks' favor as true, the court concluded that Norfolk Southern was entitled to judgment as a matter of law on her three claims of negligence that weren't preempted by federal law.

## II. STANDARD OF REVIEW

To prevail on a motion to alter or amend a judgment brought under Federal Rule of Civil Procedure 59(e), a movant must either present newly discovered evidence to the court or emphasize evidence already in the record

that clearly establishes a manifest error of law or fact. Harrington v. City of Chicago, 433 F.3d 542, 546 (7th Cir. 2006). The court granted summary judgment because Norfolk Southern established "there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(A). A material fact is a fact that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute involves evidence "such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is not material if it would not affect the outcome of the case, and consequently whether it is disputed is irrelevant. Id. When reviewing a summary judgment motion, the court accepts as true all admissible evidence relied on by the non-moving party and draws all reasonable inferences from those facts in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

Ms. Eubanks doesn't present new evidence. She argues that the expert opinion of William D. Berg, Ph.D., P.E., submitted with her memorandum in opposition to summary judgment, contains evidence that establishes a genuine issue of a material fact that made summary judgment inappropriate. A manifest error of law or fact that warrants reversal under Rule 59(e) requires a "wholesale disregard, misapplication, or failure to recognize controlling precedent" in the judgment. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (*quoting* Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). To simply "rehash[] old arguments" is insufficient. Id.

### III. DISCUSSION

A plaintiff must prove three elements to establish negligence under Indiana law: the defendant owed a duty to the plaintiff, the defendant breached that duty, and the breach of the duty caused the injury. Christmas v. Kindred Nursing Ctrs. Ltd. P'ship, 952 N.E.2d 872, 878 (Ind. Ct. App. 2011). "Summary judgment is appropriate if the material evidence negates one of these elements," and is "'rarely appropriate' in negligence cases." Id. The plaintiff must prove the defendant's wrongful act was the cause in fact of the accident. Daub v. Daub, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994) ("[T]he harm would not have occurred 'but for' the defendants' conduct."). Unless there are extraordinary circumstances, courts will not infer negligence simply based on an accident having occurred. Taylor v. Community. Hosps. of Indiana, Inc., 949 N.E.2d 361, 364 (Ind. Ct. App. 2011) (*quoting* Hale v. Community. Hosp. of Indianapolis, Inc., 567 N.E.2d 842, 843 (Ind. Ct. App. 1991)). "Standing alone, evidence establishing a mere possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict." Taylor v. Community. Hosps. of Indiana, 949 N.E.2d at 365 (*quoting* Daub v. Daub, 629 N.E.2d at 877).

Construing the evidence in the summary judgment record in Ms. Eubanks' favor, the court determined Norfolk Southern breached its duty to sound the horn according to 49 C.F.R. § 222.21 when the train approached the intersection. Section 222.21 requires the series of horn blasts to begin fifteen to twenty seconds before the intersection. Beginning the sequence five seconds early is excusable if the engineer, in good faith, did not accurately estimate the

train's arrival in the intersection. The parties agree the engineer, Mr. Meier, began the horn sequence twenty-one seconds before the intersection. As the train approaches the intersection, section 222.21 requires the horn to be sounded in the following pattern: two long blasts, one short blast, one long blast. The parties agree the horn was sounded in the following pattern: three short blasts, one long blast. A jury could find that the horn's sounding wasn't in compliance with the regulation and Norfolk Southern breached its duty to Ms. Eubanks.

Still, the court concluded that no reasonable jury could find on this record that the two required longer blasts at the beginning of the sequence would have changed the outcome of the incident. The two long horn blasts would have been issued at twenty-one and ten seconds before the intersection. The third and fourth blasts complied with the regulation in their length. The fourth and final horn blast before the collision sounded for a full five seconds while the train moved the final 140 feet to the point of impact. During this period of time, Ms. Eubanks moved ten to fifteen feet across the track.

Ms. Eubanks' testimony supported the court's conclusion that a horn sequence that complied with the regulation would not have prevented the collision. During her deposition, Ms. Eubanks testified that she heard none of the train's four horn blasts, including the final horn blast issued as the train bore down on her and through the collision.[1] She also testified that she didn't

---

[1] Ms. Eubanks was asked, "Did you ever hear either train sound its horn?" to which she answered, "Oh, no. I never heard that." Eubanks Dep., at 52. Ms. Eubanks was asked, "On the day of the accident, did you hear the horn on the train that was approaching before it struck you?" She

hear the locomotive's bell that began ringing when the first horn was signaled twenty-one seconds before the intersection and continued to ring through the intersection. (Eubanks Dep. at 52).

Ms. Eubanks didn't point to any evidence that would indicate the train's horn would have been more audible had the first and second signals been long instead of short. These horn blasts were issued when the train was further from the point of impact and the eastbound train was still in the intersection. Longer horn blasts wouldn't have changed the outcome of this unfortunate accident.

Ms. Eubanks contends this conclusion is erroneous if the court considers the expert opinion of Mr. Berg, who determined that two groups of factors behaviorally explain the collision: an expectancy violation and a combination of the wheel noise, the improper horn pattern, and competing horn sounds. (Doc. No. 47-6, at 4). According to Mr. Berg, the two trains passing each other at the intersection was an expectancy violation because of the lack of gates or flashing lights preventing Ms. Eubanks' line of travel and the fact that a bicyclist crossed the tracks after the first train cleared the intersection. The summary judgment order established that federal law preempts a state tort law claim regarding the design of the intersection, so the adequacy of the safety mechanisms in the intersection isn't considered in the court's negligence analysis. See Norfolk S. Ry. Co. v. Shanklin, 529 U.S. 344

---

answered that she did not. Eubanks Dep., at 72. Ms. Eubanks was also asked, "Is it possible that horn was being sounded and that, for some reason or another, you just didn't hear it?" She answered, "It's possible, but I didn't hear it." Eubanks Dep., at 72.

(2000). Mr. Berg also concluded that Ms. Eubanks would have had difficulty detecting the approach of the train due to the wheel noise from the other train, the train's horn was not signaled in the normal pattern, and the competing horn sound from the other train.

Ms. Eubanks asserts that "due to" equals "caused by" and the court's conclusion means one long horn signaled five seconds before impact cures the engineer's negligence despite the human factors at the crossing. Ms. Eubanks' assertion is a flawed interpretation of the court's conclusion. Construing the evidence most favorably to Ms. Eubanks, the court determined that even though the bicyclist quickly crossed the tracks and the eastbound train was emitting competing horn sounds and wheel noise, the westbound train's failure to signal the horn properly did not cause the accident. The court considered the evidence and concluded despite these other factors, the record contained no evidence the length of the horn blasts would have changed the outcome of the incident. A genuine dispute of a material fact doesn't exist; Ms. Eubanks hasn't demonstrated a manifest error by the court.

IV. Conclusion

For the foregoing reasons, the court DENIES Ms. Eubanks' motion to alter or amend the June 20, 2012 order granting Norfolk Southern summary

judgment on all claims (Doc. No. 63). Any pending dates regarding the case are VACATED.

SO ORDERED.

ENTERED: September 19, 2012

/s/ Robert L. Miller, Jr.
Judge
United States District Court